WILKINSON, Circuit Judge,
concurring:
I am pleased to concur in Judge Motz’s fine opinion in this case. It underscores the wisdom of Rule ll’s injunction to district courts to “not participate in [plea] discussions.” Fed.R.Crim.P. 11(c)(1). Like my colleagues, I find it difficult to criticize the district court. See Maj. Op. Sect. IV. That court rightly recognized that defendants often benefit substantially from taking a plea. However, it failed to appreciate sufficiently that where, out of a belief in one’s innocence, a desire to put the state to its proof, or a desire simply to roll the dice, defendants may, if they wish, risk deeply unfavorable outcomes by exercising a judicially unimpeded right to proceed to trial.
I.
I would emphasize, however, the Supreme Court’s emphatic holding that Rule 11(c) violations are not structural errors, but are subject to harmless and plain error review. See Fed.R.Crim.P. 11(h), 52(a)-(b). In United States v. Davila, — U.S. -, 133 S.Ct. 2139, 186 L.Ed.2d 139 (2013), the defendant contended that courts should automatically vacate convictions arising from plea agreements where the court engaged in “conduct banned by Rule 11(c)(1)” because “[w]hen a judge conveys his belief that pleading guilty would be to a defendant’s advantage ... [he] becomes, in effect, a second prosecutor, depriving the defendant of the impartial arbiter to which he is entitled.” Id. at 2148. Rule 11(c) violations, Davila argued, should be “no mere procedural technicality.” Id.
Yet a holding of structural error would have vitiated the Supreme Court’s long support for “the finality of guilty pleas.” See id. at 2147 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 79, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004)) (inter *823 nal quotation marks omitted). The Court thus firmly rejected the contention that Rule 11 violations should be considered structural error, asserting that Rule 11 does not “demand[ ] automatic vacatur of the plea without regard to case-specific circumstances.” Id. at 2148. Only “a very limited class of errors” should be considered structural errors such that they “trigger automatic reversal.” Id. at 2149 (quoting United States v. Marcus, 560 U.S. 258, 263, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010)) (internal quotations omitted). Rule 11, the Supreme Court stressed, “does not belong in that highly exceptional category.” Id.
The majority notes that the Supreme Court did not adopt a difficult “but for” standard for determining whether the Rule 11(c) violation affected a defendant’s rights, in this case the desire to proceed to trial. Maj. Op. at 819-20. It also bears noting that the court did adopt a “reasonable probability” standard, not a “reasonable possibility” test, which would have proven much easier for defendants to satisfy, but would also have undermined plea finality.
II.
I concur in the majority opinion because it rightly notes that the nature of the district court’s involvement here lent itself to ready interpretation of a coerced plea agreement. The court handed out an as-sertedly more favorable sentence after a plea of guilty and threatened a “less pleasant sentence” if the defendant exercised his bedrock right to proceed to trial. J.A. 172. In addition the “close temporal proximity” between the court’s comments and the reversal of field on the defendant’s part resulting in a plea of guilty further augments the appearance of unwarranted judicial interference.
Crucial to my concurrence is the majority’s recognition that other scenarios may be quite different from this case. Specifically judicial involvement may be more cursory than here. Or it may be that the plea agreement, unlike here, was entered prior to the trial court’s alleged involvement. Or it may be again that a longer lapse of time attenuates any causal connection between a trial court’s comments and a defendant’s decision to plead guilty. Further, a Rule 11 plea hearing replete with safeguards to ensure the voluntary and intelligent nature of the plea may be a factor reinforcing the application of Rule ll’s harmless error standard. See Davila, 133 S.Ct. at 2149-50. Finally, the prospect of defendants blowing hot and cold as to their intentions to plead or go to trial would verge on sandbagging and not commend a challenge on appeal.
The factual scenarios are many and varied, and as the majority emphasizes, the case rises or falls on the “facts and circumstances” of the particular case. Maj. Op. at 819 (quoting Davila, 133 S.Ct. at 2149). This case is a close one, because the record hints at the kind of defendant gamesmanship that often masquerades as change of heart both on whether to proceed to trial or, in other cases, whether to exercise one’s Faretta right to proceed pro se. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The majority has carefully explained why on the facts here, the defendant should be accorded the benefit of the doubt. The totality of the circumstances persuades me as well that the heavy arsenal of judicial authority was deployed to dissuade a defendant from exercising his fundamental right to a fair trial.